# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CRIMINAL NO. 3:19-CR-00244-FDW-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> ) <br> ) <br> v. ) <br> ) <br> ) <br> WILLIAM JON PATRIC EBERT, ) <br> ) <br> Defendant. ) | **MEMORANDUM AND** <br> **RECOMMENDATION** |

THIS MATTER is before the Court on Defendant's "Motion to Suppress Evidence," Doc. 21, filed on December 16, 2019. The "Government's Opposition to Defendant's Motion to Suppress," Doc. 24, was filed on January 7, 2020.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and the Motion is now ripe for consideration.

Having fully considered the record and counsel's submissions, the undersigned respectfully recommends that Defendant's Motion to Suppress be <u>denied</u> as discussed below.

## I. FACTUAL BACKGROUND

On August 21, 2019, Defendant was charged in a three count Indictment. Doc. 1. Count One of the Indictment charges Defendant with transporting Child Victim 1 in interstate commerce with the intent that Child Victim 1 engage in sexual activity for which any person can be charged[1]

---

[1] The underlying offenses alleged are 18 U.S.C. §§ 2251 (a) and (e) – Sexual Exploitation of Children; North Carolina Gen. Stat. § 14-178 – Incest; North Carolina Gen. Stat. § 14-190.16 – First Degree Sexual Exploitation of a Minor; North Carolina Gen. Stat. § 14-202.1 – Taking Indecent Liberties with Children; Ohio Rev Code. § 2907.03

between November 2006 and April 2007, in violation of 18 U.S.C. § 2423(a). Id. Count Two charges Defendant with employing, using, persuading, enticing, coercing, and attempting to employ, use, persuade, induce, and entice Child Victim 1 to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct between April 2011 and April 2013, in violation of 18 U.S.C. §§ 2251(a) and (e). Id. Count Three charges Defendant with possessing and accessing child pornography on or about September 22, 2016, in violation of 18 U.S.C. § 2252A(a)(5)(B). Id.

The briefs submitted establish the following pertinent facts:

On September 21, 2016, State Bureau of Investigation Special Agent N. S. Anderson applied to a North Carolina District Court Judge for a search warrant of Defendant's residence. The Application for the Search Warrant, which incorporated "Affidavit in Support of Search Warrant," "Attachment A – Items to Be Seized" and "Attachment B – Description of Place to Be Searched," alleged there was probable cause to believe that Defendant's residence contained evidence of "First Degree Sexual Exploitation of a Minor, G.S. 14-190.16." The Warrant authorized the search of 250 River Run Road in Boone, North Carolina for images of child pornography, various computer devices, information pertaining to child pornography, and other identifying records. See Search Warrant Application "ATTACHMENT A" and "ATTACHMENT B" of Document 24-1.

In the Affidavit, Anderson provided background on his training and experience. He was currently assigned to the Computer Crimes Unit and was a member of the Internet Crimes Against

---

– Sexual Battery; Ohio Rev. Code § 2907.04 – Unlawful Sexual Conduct with a Minor; Ohio Rev. Code § 2907.05 – Gross Sexual Imposition; Ohio Rev. Code § 2907.321 – Pandering Obscenity Involving a Minor or Impaired Person; and Ohio Rev. Code § 2907.322 – Pandering Sexually Oriented Matter Involving a Minor or Impaired Person.

Children Task Force. He cited his experience in child exploitation investigations and investigations involving computer related media as well as his knowledge of the applicable law. Doc. 24-1.

Anderson stated that he was providing information he had learned personally as part of the investigation, as well as information from others, but was not including everything he knew, just "the facts that he believes are necessary to establish probable cause to believe that evidence of violations of North Carolina General Statute (NCGS) 14-190.16, 14-190.17, and 14-190.17A is located at" the place to be searched. Id. at ¶¶ 7, 9.

Anderson stated that he had been contacted by Detective Eric Bergen with the Avon, Ohio Police Department concerning their investigation of Defendant. Id. at ¶10. Child Victim 1 had lived in Avon from the time she was thirteen years old in 2008 until she turned sixteen in 2011. Id. at ¶ 11. Defendant is Child Victim 1's father. During that time, Defendant "would coach [Child Victim 1] on becoming familiar with body and would try to convince [Child Victim 1] to masturbate with herself." Id. Defendant "requested [Child Victim 1 to utilize a web camera connected to [Defendant's] computer to record the event. [Child Victim 1] stated she did in fact masturbate and recorded herself performing the sex act utilizing the web camera as [Defendant] instruction [sic]. [Child Victim 1] stated she tried to delete the file, however, she was unsure if she successfully deleted it." Id. at ¶ 12.

Anderson also provided information regarding photo shoots Defendant conducted of Child Victim 1 during that time period. Id. at ¶ 13. "These photo shoots would consist of [Child Victim 1] being in her underwear and in various provocative poses. [Defendant] would direct [Child Victim 1] in the various poses while taking the photographs." Id. Anderson stated that the photo sessions continued when they moved back to North Carolina. Id. at ¶ 14. "During these photograph

sessions, [Child Victim 1] stated she would be completely nude. Once the photo shoot was complete, [Defendant] would show [Child Victim 1] the photographs he took on his computer." Id. Anderson described a specific pose Child Victim 1 remembered assuming at Defendant's direction. Id. at ¶ 15. "[W]hile being completely nude, [Child Victim 1] knelt on a bed with her buttocks in the air, and used her hands to spread her buttocks a part [sic] in order for [Defendant] to take a photograph on [sic] [Child Victim 1's] genitalia area." Id. Anderson also included how Child Victim 1 said they relocated around the time she was seventeen years old to the home in Boone. She resided there until she was married at nineteen. Id. at ¶ 16.

On July 6, 2016, Detective Bergen subpoenaed Charter Communications for subscriber information associated with the residence at 250 River Run Road in Boone. Id. at ¶ 17. Charter Communications provided internet service to that residence and specifically to Defendant. Id. Anderson conducted a records check through NC CJLeads on Defendant to confirm that he lived at that address. Id. at ¶ 18.

In the Affidavit, Anderson stated that "individuals who are involved in the production, distribution, and/or possession of child pornography will hold onto their collections and not delete many files," and that they "keep their files in order to review them" later, reminisce, and "seek sexual gratification" from those files. Id. at ¶ 19. He discussed the massive storage capabilities of computer storage media; the many types of storage media; the need to forensically examine these computer systems in order to sort through all of the data and determine whether it is included within the warrant's purview; and how to conduct the search in a controlled environment to "protect the integrity of the evidence and recover even hidden, erased, compressed, password-protected, or encrypted files." Id. at ¶¶ 21-23.

He also explained how child pornography is different from other types of contraband, such as alcohol or tobacco, since it is not "used up." Id. at ¶ 32. Evidence of child pornography "is usually stored in a manner that is accessible to the subject viewing the images and is usually stored on a computer's hard drive or some other type of accessible electronic storage media." Id. Thus, it "can and is usually stored for an indefinite amount of time." Id. Anderson stated that, based on his experience and training, he knows that "in many instances these types of files have been found that were stored for years and transferred from and between storage medium and from computer to computer." Id.

Based upon the foregoing, Anderson concluded that "the Affiant believes that Probable Cause exists to search the residence and any computer/electronic devices found within the residence located at 250 River Run Road, Boone, North Carolina, for evidence of violations of G.S. 14-190.16 known as First Degree Sexual Exploitation of a Minor, G.S. 14-190.17 known as Second Degree Sexual Exploitation of a minor and/or G.S. 14-190.17A, known as Third Degree Sexual Exploitation of a Minor." Id. at ¶34. In total, the Search Warrant, Application, Affidavit, Attachment A, and Attachment B spanned thirteen pages. The North Carolina District Court Judge signed each page and issued the Search Warrant.

On September 22, 2016, law enforcement officers with the North Carolina SBI executed the Search Warrant at Defendant's residence, the place identified in the Affidavit and described in Attachment B. The officers seized items pursuant to Search Warrant Attachment A, including a Western Digital external hard drive ("WDHD") and a Toshiba external hard drive ("THD").

Anderson performed forensic searches on various devices belonging to Defendant including the WDHD and THD. On the WDHD, Anderson found images of Child Victim 1 at

various ages and in various states of undress. In several images, Child Victim 1 is completely naked and her vagina is the focal point of the image. She was a minor at the time the photos were taken. Anderson also found four videos of Child Victim 1. In three of the videos she is wearing only a bra and underwear. In the fourth video she is wearing shorts and a tank top. Defendant can be heard talking to Child Victim 1 in each of the four videos. The conversations include Defendant discussing the lighting and directing Child Victim 1 to assume certain poses and make certain facial expressions. The videos show that Defendant is the only other person present, and is the one making the videos. During one of the videos, Defendant's reflection is visible in the fireplace as he holds a camera. The "Created Date" for all four of these videos is June 28, 2013. Child Victim 1 had recently turned eighteen and was no longer a minor. Anderson found those same four videos on the Defendant's THD. He also found images of Child Victim 1 and her sister posing in their underwear, and an image of an unknown female who is naked from the waist up, breasts visible, with her face outside of the frame.

Defendant argues that the information in the Affidavit failed to establish probable cause that child pornography would be found at the place to be searched. Defendant argues that the information was too stale to establish probable cause. Defendant also argues that the Affidavit provided no connection between the evidence sought and the place to be searched.

Some of Defendant's arguments are hard to fathom. He argues that Child Victim 1 "says she was being told to do these things for learning purposes and to be comfortable with her body and there is nothing contained in the warrant to dispute her statement of the purpose of the video." Doc. 21 at 5. He contends that "[w]hile taking pictures of a child nude may give some suspicion of sexual exploitation, the father-daughter relationship here would undermine any implied lewd

nature of the pictures." Doc. 21 at 6. To put it mildly, these contentions strain credulity and the Court rejects them at the outset.

The Government asserts the Affidavit provided sufficient facts to support a finding of probable cause that Defendant had violated the North Carolina statutes and that he still possessed evidence, fruits and instrumentalities of those crimes at his residence.

## II. DISCUSSION

The Fourth Amendment to the Constitution provides that "no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the... things to be seized." U.S. CONST. amend IV. Before issuing a search warrant, the judge must find probable cause that a crime has been committed. See Illinois v. Gates, 462 U.S. 213, 235 (1983). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him... there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238; see also United States v. Grubbs, 547 U.S. 90, 90 (2006). Probable cause is therefore "not a high bar." District of Columbia v. Wesby, ––– U.S. ––––, 138 S. Ct. 577, 586, 199 L.Ed.2d 453 (2018) (quoting Kaley v. United States, 571 U.S. 320, 338 (2014)).

The probable cause standard does not "require officials to possess an airtight case before taking action." Taylor v. Farmer, 13 F.3d 117, 121-22 (4th Cir. 1993). The Fourth Circuit has held that "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inference of where one would likely keep such evidence." United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988).

The judge's initial probable cause determination is entitled to "great deference." Gates, 462 U.S. at 236 ("after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review"). A search warrant should be upheld if the issuing judge had a "substantial basis" for concluding that probable cause existed for the search. See id. at 238-39. Further, this determination should be made based upon the totality of the circumstances as set forth in the supporting affidavit, including any corroborating evidence of information that has been obtained. United States v. Hodge, 354 F.3d 305, 309 (4th Cir. 2004).

**1. Lack of Information and Details about Photographs**

Defendant argues that the information in the Affidavit failed to establish probable cause that child pornography would be found at the place to be searched. He argues that the Affidavit relied solely on the statements by Child Victim 1 and Anderson provided no information that the images he was looking for were of a lascivious nature and illegal. The Court disagrees.

The Affidavit established probable cause with detailed information Child Victim 1 provided about Defendant's sexual exploitation. This information showed Defendant's systematic and incremental grooming and sexual exploitation of Child Victim 1. While living in Ohio, Defendant conducted various photo shoots of Child Victim 1 in her underwear and in provocative poses when she was between thirteen and sixteen years old. He instructed her to use the web camera connected to his computer to record herself masturbating. After returning to North Carolina and devoting a few years acclimating Child Victim 1 to the provocative, underwear-clad photo shoots and recordings, Defendant photographed Child Victim 1 completely naked. The Affidavit provided a graphic description of one of these photos, including the way Defendant directed Child Victim 1 to pose in order to produce his desired image of her genitalia. The Affidavit

was not limited to that single photographic description. It included facts about multiple photo shoots orchestrated by the Defendant. Child Victim 1 was naked during these photo shoots starting at age sixteen while still a minor. Defendant would show her the photos on his computer afterwards. The Court finds that this provides sufficient information to support a fair probability that Defendant both produced, photographed, and possessed sexually exploitative images of Child Victim 1, a minor.

   2. **Staleness**

Defendant argues that even if the Affidavit showed that the images were illegal, the information was too stale to establish probable cause. Defendant contends that the Search Warrant signed on September 21, 2016 detailed events that had taken place between 2008 and 2011. There would be between five and eight years between the allegations of the photographs being taken of Child Victim 1 and when the Defendant's property was seized by law enforcement.

"A valid search warrant may issue only upon allegations of 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.'" United States v. McCall, 740 F.2d 1331, 1335–36 (4th Cir. 1984) (quoting Sgro v. United States, 287 U.S. 206, 210 (1932)). The existence of probable cause, however, cannot be determined by "simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." United States v. Richardson, 607 F.3d 357, 370 (4th Cir. 2010) (quoting McCall, 740 F.2d at 1136). Instead, like probable cause more generally, staleness is judged based upon "all the facts and circumstances of the case, including the nature of the unlawful activity" and "the nature of the property to be seized." Id.

In United States v. Richardson, the Fourth Circuit explained:

> In the context of child pornography cases, courts have largely concluded that a delay—even a substantial delay—between distribution and the issuance of a search warrant does not render the underlying information stale. This consensus rests on the widespread view among the courts—in accord with Agent White's affidavit—that "collectors and distributors of child pornography value their sexually explicit materials highly, 'rarely if ever' dispose of such material, and store it 'for long periods' in a secure place, typically in their homes." United States v. Lacy, 119 F.3d 742, 746 (9th Cir.1997); see United States v. Watzman, 486 F.3d 1004, 1008 (7th Cir.2007) (rejecting challenge to probable cause where three months elapsed between the crime and issuance of the warrant where agent testified child pornographers retain their collected materials for long periods of time); United States v. Gourde, 440 F.3d 1065, 1072 (9th Cir.2006) (en banc) (concluding that "[t]he details provided on the use of computers by child pornographers and the collector profile" provided support for a finding of probable cause); United States v. Riccardi, 405 F.3d 852, 861 (10th Cir.2005) (finding probable cause based, in part, on "the observation that possessors often keep electronic copies of child pornography"); United States v. Lemon, 590 F.3d 612, 615 (8th Cir.2010) ("Many courts, including our own, have given substantial weight to testimony from qualified law enforcement agents about the extent to which pedophiles retain child pornography."), cert. denied, No. 90–10170, ——U.S. ——, 130 S.Ct. 3305, —— L.Ed.2d ——, 2010 WL 1531424 (2010); United States v. Morales–Aldahondo, 524 F.3d 115, 119 (1st Cir.2008) (holding that three-year delay between acquisition of child pornography and application for warrant did not render supporting information stale since "customers of child pornography sites do not quickly dispose of their cache"), cert. denied, 555 U.S. 1005, 129 S.Ct. 512, 172 L.Ed.2d 376 (2008).

607 F.3d at 370.

Defendant argues that the line of cases cited in Richardson is distinguishable here because there is no evidence that Defendant distributed or uploaded the photographs. Defendant relies heavily on United States v. Prideaux-Wentz, 543 F.3d 954 (7th Cir. 2008) for his staleness argument.

In Prideaux-Wentz, the search warrant obtained on January 31, 2006 was supported by an FBI agent's Affidavit describing how Prideaux-Wentz had uploaded sixty-nine images of child pornography/erotica onto eight Yahoo! e-groups. 543 F.3d at 956. The agent was aware of these uploads as a result of nineteen tips Yahoo! had sent to the National Center for Missing and

Exploited Children ("NCMEC") between August 15, 2003, and January 28, 2004. Id. In his Affidavit, the agent provided subscriber information connecting the relevant Yahoo! ID to Prideaux-Wentz, and information connecting another NCMEC tip that Microsoft/MSN had submitted on September 7, 2002, reporting that it had disabled an account containing child pornography. Id. at 957. The agent also provided information about the characteristics of child pornography collectors, including that they rarely, if ever, dispose of their collections. Id.

The Seventh Circuit held that the search warrant lacked probable cause because the information was stale. Id. at 958. The Court found that the warrant did not indicate when the pictures were uploaded to the Yahoo! e-groups, nor was there anything else in the record that provided that information. Id. Because the Government had not discovered the dates the pictures were uploaded (and conceded that information was available for at least two of the Yahoo! e-groups), the Seventh Circuit found the potential four-year gap between the pictures being uploaded and the search warrant undermined the probability that the images would be found during the search. Id. at 959. For that reason, the Seventh Circuit held that the information upon which the warrant relied was stale and the warrant lacked probable cause. Id. But the Seventh Circuit affirmed the district court's denial of Prideaux-Wentz's motion to suppress, finding the warrant was saved by the good faith exception. Id. at 959-963.

Defendant argues that the allegations by Child Victim 1 without more are stale because there was a substantial gap in time and little evidence about the nature of the images. The Court disagrees. In United States v. Seiver, 692 F.3d 774, 775-76 (7th Cir. 2012), the Seventh Circuit distinguished its reasoning for finding staleness in Prideaux-Wentz, explaining that the authors of that opinion did not understand that deleting a computer file does not destroy it. The Seiver court explained:

> The concern with "staleness" versus freshness and "collecting" versus destroying reflects a misunderstanding of computer technology . . . When you delete a file, it goes into a "trash" folder, and when you direct the computer to "empty" the trash folder the contents of the folder, including the deleted file, disappear. But the file hasn't left the computer. The trash folder is a waste-paper basket; it has no drainage pipe to the outside. The file seems to have vanished only because the computer has removed it from the user interface and so the user can't "see" it any more. But it's still there, and normally is recoverable by computer experts until it's overwritten because there is no longer unused space in the computer's hard drive.

Id. at 776 (internal citations omitted). The Seiver court thus concluded that:

> "Staleness" is . . . rarely relevant [to the legality of a search] when it is a computer file. Computers and computer equipment are "not the type of evidence that rapidly dissipates or degrades." Because of overwriting, it is possible that the deleted file will no longer be recoverable from the computer's hard drive. And it is also possible that the computer will have been sold or physically destroyed. And the longer the interval between the uploading of the material sought as evidence and the search of the computer, the greater these possibilities. But rarely will they be so probable as to destroy probable cause to believe that a search of the computer will turn up the evidence sought; for probable cause is far short of certainty – it "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," and not a probability that exceeds 50 percent ("more likely than not"), either.

Id. at 777 (internal citations omitted).

Additionally, in United States v. Carroll, 750 F.3d 700, 708 (7th Cir. 2014), the Seventh Circuit explained:

> In recognition of the well-established hoarding habits of collectors of child pornography, this Court's holding in Prideaux–Wentz and cases from other circuits make clear that under certain circumstances years can pass between information about child pornography offenses and applications for search warrants without rendering the information stale. See, e.g., United States v. Burkhart, 602 F.3d 1202, 1206–07 (10th Cir.2010) (holding that an email between child pornography distributor and the defendant that occurred two years and four months before issuance of a search warrant for the defendant's home was not stale); United States v. Morales–Aldahondo, 524 F.3d 115, 119 (1st Cir.2008) (holding that a more than three-year lapse between the defendant's purchase of child pornography and the warrant application did not render the information stale because a special agent attested that those who download child pornography tend to retain images for years and use computers to augment and store collected images); United States v. Eberle, 266 Fed.Appx. 200, 205–06 (3d Cir.2008) (holding that three-and-a-half-year-old information was not stale "because individuals protect and retain child pornography

for long periods of time as child pornography is illegal and difficult to obtain"); United States v. Irving, 452 F.3d 110, 116, 125 (2d Cir.2006) (rejecting staleness argument where warrant was issued based on, among other things, various letters the defendant wrote two or more years earlier about his past sexual exploitation of children, a five-year-old witness statement, child erotica images on diskettes found five years earlier in the defendant's luggage, and five-year-old identifications by children who witnessed the defendant sexually abuse young boys); United States v. Riccardi, 405 F.3d 852, 861 (10th Cir.2005) (finding five-year-old information relied upon in part in issuing search warrant was not stale).

These cases, of course, do not establish bright line time limits after which information concerning the possession of child pornography becomes too stale to support a finding of probable cause. Indeed, the case-by-case, totality-of-the-circumstances, nature of the probable cause determination militates against establishing a bright line time limit. See Sutton, 742 F.3d at 774 ("[T]here is no bright line rule for determining staleness."); Pappas, 592 F.3d at 803 (same). Consequently, we are not obligated to deem the information at issue in this case stale just because it is older than information at issue in any previous case including the four-year-old information that was deemed stale in Prideaux–Wentz. Instead, as is well understood, each case is *sui generis*. See Gates, 462 U.S. at 232, 103 S.Ct. 2317 ("[P]robable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules.").

750 F.3d 700, 704-706

The Court finds the Carroll case particularly instructive here. In Carroll, the investigation began on March 1, 2012, following the February 7, 2012 report by a thirteen-year old girl that she had been molested by Carroll when she was eight years old in 2007. 750 F.3d 700, 701-702 (7th Cir. 2014). At the same time the investigation began, a search warrant was sought five years after the reported molestation. Id. at 702. The detective seeking the warrant described his years of experience, including his working knowledge and understanding about collectors of child pornography, and their proclivity to secure and maintain their collections. Id. Through forensic processes, deleted images may be retrieved years later. Id. The detective found images stored up to five years after they had been created, and with current technology, they could be quickly placed on multiple storage devices within a residence. Id.

The detective relayed how Carroll had been the victim's babysitter and a friend and co-worker of her father. Id. In addition to molesting her, the victim reported that Carroll had showed her digital images on his camera – which she described as having a big lens – of younger children in partial states of undress, posed in Victoria Secret type poses. Id. She also reported that an adult male, who she believed to be Carroll, came into her bedroom, lifted her gown, and photographed her bare genitalia. Id. Based upon the sound it made, she believed it was Carroll's camera. Id. She knew him to be a professional photographer and, given the time she had spent with him, was familiar with the camera. Id. The victim's father said he worked with Carroll, who was a professional photographer with a desktop camera, and that Carroll transported his camera between his office and residence daily. Id. The father also reported that Carroll used a large number of thumb drives or memory sticks. Based upon this information, an Indiana superior court judge found there was probable cause to search Carroll's residence and issued the warrant. Id.

Carroll appealed, arguing the district court erred when it rejected his staleness argument and denied the motion to suppress. Id. at 703. In finding the information in the affidavit was not stale, the Seventh Circuit explained "that a staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology." Id. at 704. The Carroll court found that the staleness issue had been adequately addressed in the affidavit, which detailed why Defendant might have retained the images of the victim on his computer or other digital storage device and that even if they had been deleted, might still be recoverable. Id. The court explained how the facts in Carroll were distinguishable from the search warrant in Prideaux-Wentz "and demonstrate a likelihood of retention that was greater than could be expected in the normal child pornography case." Carroll, 750 F.3d at 705. Unlike in Prideaux-Wentz, Carroll was the producer of the child pornography. The images were of the victim he molested, making them

irreplaceable to him unlike images of anonymous children. Id. The Carroll court noted other aspects of the search warrant that distinguished it from the one in Prideaux-Wentz. The detective in Carroll stated that that he had previously recovered five-year-old digitally stored files. He sought the search warrant within days of learning of the victim's report and provided a definitive time when Carroll possessed the images of child pornography – in 2007, when the victim was eight years old. Id. at 705-706. Based upon those distinguishing features including the nature of Carroll's criminal acts and the child pornography he produced, the five-year lapse between those criminal acts and the application for the search warrant did not render the information stale. Id. at 706.

The Court finds that the information provided by Anderson's Affidavit is likewise distinguishable from Prideaux-Wentz and the facts here are much more closely aligned to those in Carroll. Though the Affidavit did not provide a definitive end date, it is clear that Defendant's criminal acts continued after he returned to North Carolina in 2011. Doc. 24-1 at ¶14. The time lapse between Defendant's criminal acts alleged in the Affidavit – including producing and possessing child pornography both in Ohio between 2008 and 2011, and in North Carolina in 2011 (and potentially later) and Anderson applying for the Search Warrant in 2016 was no more than the five year period in Carroll. Id. at ¶¶ 12, 14-15; Carroll, 750 F.3d at 702.

The precious nature of the images to the producer, particularly when they involve a child well known to him, was explained here and in Carroll. The Affidavit here described how Defendant groomed and sexually exploited Child Victim 1 for years. Id. at ¶¶ 11-15. This was not an anonymous child, nor was Defendant's conduct simply uploading or downloading pictures of child pornography he had obtained on the internet. As Defendant notes in his Motion, the facts here differ from United States v. Richardson, where defendant was collecting and distributing child

pornography featuring children unknown to him. 607 F.3d 357 (4th Cir. 2010) (finding that collectors and distributors of child pornography value their sexually explicit materials and rarely if ever dispose of such material, storing it for long periods of time and in secure places, typically their homes).

The Affidavit reflects that Defendant's collection of sexually exploitative images of Child Victim 1 were likely irreplaceable to him. The Affidavit shows Defendant's ongoing interest in Child Victim 1's sexuality, body, and sex acts spanning over three years and across two states. Id. at ¶¶ 11-15. These were not images Defendant would be able to replace with covert and creative searches on the dark web. See Carroll, 750 F.3d at 705 ("While pornographic images of anonymous children could be replaced with other anonymous children, Carroll's images of the eight-year-old victim were irreplaceable to him. Under these circumstances, it was fair to the issuing judge to infer that Carroll would highly value the images of the victim and retain them on some type of digital media for a very long time."); see also United States v. Boysk, 933 F.3d 319, 333 (4th Cir. 2019) (holding that "boilerplate" language in search warrant affidavit "drew on accepted case law and served to establish that Boysk's computer would contain child pornography (or at least its remnants) some months after attempted access").

In his Affidavit, Anderson also cited the need for a controlled environment when performing forensic searches of computer systems to recover erased files. Doc. 24-1 at ¶ 23. He also explained how child pornography is not the type of contraband that is consumed, but can be stored for an indefinite period of time. Id. at ¶ 32. Through his training and experience, he knew of many instances where these types of files were found after years of storage and transfer between different storage mediums. Id.

The Court concludes that the information in the Affidavit was not stale. The Affidavit contains a detailed description of Defendant's systematic and incremental grooming and sexual exploitation of Child Victim 1, including his recording and photographing her. The Affidavit contained a comprehensive explanation of computer usage as well as a description of how computer files, images, and other data may be recovered months or years later. The Affidavit also explained that it is known, based upon law enforcement training and experience, that individuals who are involved in the production, distribution and possession of child pornography will retain their collections. The Affidavit also informed the issuing judge of the nature of the photo sessions as well as one graphic photograph that Child Victim 1 recalled being taken by Defendant.

### 3. No Connection between the Evidence Sought and Defendant's Boone Address

Defendant argues that the Affidavit contains no allegations that Defendant did anything with an email address or used the internet to disseminate, upload or download child pornography. Therefore, there was no nexus between Defendant's Boone address and the images alleged to have been taken between five and eight years earlier in Ohio and Charlotte.

The Fourth Circuit has held "that the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inference of where one would likely keep such evidence." United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988). And "common sense dictates that a computer containing illicit images would be stored in a private home." United States v. Johnson, 865 F. Supp. 2d 702, 708 (D.Md. 2012) (citing United States v. Peterson, 294 F. Supp. 2d 797, 806 (D.S.C. 2003)).

In addition to providing information on Defendant's multi-year, sexually-exploitative relationship with Child Victim 1, the Affidavit described Defendant showing Child Victim 1 her images on his computer and established his residence at the time of the Search Warrant. Child

Victim 1 described how they moved to Boone around the time she was seventeen years old. Doc. 24-1 at ¶ 16. The address she provided was still Defendant's residence at the time of the Search Warrant. Both Detective Bergen and Anderson corroborated this information. Bergen obtained information from Charter Communications confirming that Defendant was receiving internet service at that address. Id. at ¶ 17. Anderson also performed a records check confirming that address. Id. at ¶ 18.

The Search Warrant sought evidence of Defendant's sexually exploitative activities with Child Victim 1 and, specifically, images and videos that he had directed her to produce or produced himself. The Affidavit detailed how Defendant used his computer to record Child Victim 1 masturbating and to show her the sexually exploitative images. Doc. 24-1 at ¶¶ 12, 14. As discussed above, the Affidavit provides a reasonable inference that the sexually exploitative images of Child Victim 1 were valuable to Defendant. Id. at ¶¶ 11-15. The information Anderson provided about how collectors of child pornography hold onto these files for later review, and how these files have been found after years of storage and being transferred from computer to computer counters Defendant's argument. Id. at ¶¶ 19, 32. Likewise, given that Defendant used a computer throughout his sexual exploitation of Child Victim 1 from 2008 to 2011, both in Ohio and again in Charlotte, it was reasonable for the issuing judge to conclude that Defendant had a computer at his residence in Boone that contained child pornography.

For those reasons, and with appropriate deference to the issuing judge's determination of probable cause, the Court concludes that the information in Anderson's Affidavit was sufficient to establish a fair probability that the computer or other digital storage devices within Defendant's residence would contain evidence of child pornography or sexual exploitation of a child, despite the fact that the photographs were taken approximately five years earlier. Therefore, based upon

the totality of the circumstances, the Court finds that the Affidavit established probable cause for a Search Warrant to be issued for Defendant's residence. The Court does not reach the issue of good-faith reliance on the Search Warrant.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendant's "Motion to Suppress Evidence," Doc. 21, be **DENIED**.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Frank D. Whitney.

**SO RECOMMENDED.**

Signed: January 23, 2020

_____
David S. Cayer
United States Magistrate Judge